Joseph P. Green, Jr. (PSBN 32604)
Duffy & Green
Ten North Church Street
West Chester, PA 19380
(610) 692-0500

Christopher J. Cannon (CSBN 88034)
Sugarman & Cannon
44 Montgomery Street, Suite 2080
San Francisco, CA 94104-6702
(415) 362-6252

Attorneys for Defendants

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3:07_cv_03120_MMC |
| | ) | |
| Plaintiff | ) | |
| | ) | CONTROLLED SUBSTANCE |
| v. | ) | FORFEITURE ACTION |
| | ) | |
| 1997 LAMBORGHINI DIABLO, etc., | ) | TRIAL BY JURY |
| Defendants | ) | DEMANDED |

## CLAIMANTS' ANSWER TO COMPLAINT FOR FORFEITURE
## AND CLAIMS FOR RETURN OF PROPERTY

Claimants Christopher Napoli, Christine Napoli, Pharmacy USA, LLC, and

PSA, LLC, hereby make claim for return of the defendant property, and respond to the

Complaint For Forfeiture as follows:

      1.     It is admitted that the Court has subject matter jurisdiction.

      2.     It is admitted that the plaintiff is the United States of America.

      3.     It is admitted that the defendant property is lawfully owned by and was

seized from the following claimants:

a.    1997 Lamborghini owned by Christopher Napoli;

b.    2006 Porsche Cayenne owned by Christine Napoli;

c.    $8,692.42 seized from Commerce Bank owned by PSA, LLC, an entity owned by Christopher Napoli;

d.    $6,314.76 seized from Commerce Bank owned by Pharmacy USA, LLC, an entity owned by Christopher Napoli; and

e.    $1,076,636.89 seized from a TD Ameritrade Account owned by Christopher Napoli.

4.    It is specifically denied that the defendant property constitutes or is traceable to the proceeds of unlawful distribution of controlled substances or money laundering transactions. To the contrary, the defendant property is the lawful proceeds of, or property related to the lawful proceeds of legitimate transactions.

5.    It is admitted that the property was seized, but it is specifically denied that the property was lawfully seized pursuant to valid seizure warrants. Further, it is specifically denied that the property was seized within the Northern District of California.

6.    It is denied that venue is proper in the Northern District of California. It is denied that any substantial, material acts on which this action is predicated occurred in this District. It is further denied that the property was located in the District at the time of seizure. If venue were theoretically proper within the District, venue should be transferred to the Eastern District of Pennsylvania, where the claimants reside, where the property was located at the time of seizure, and where the litigation between the

parties was pending before this action was undertaken.

7.     It is specifically denied that the government's claims arise from the unlawful sale and distribution of controlled substances within the District. It is possible that some legitimate customers resided within Santa Clara County, within the Northen District of California. It is further denied that there is any material connection between the allegations in this action and the claims to be litigated in *United States v. Russo*. While claimants have no objection to the assignment of this matter to Judge Whyte, the separate criminal charges against Russo, et al., cannot be consolidated with the allegations in this civil action. Accordingly, the merits of the government's claims should be decided by a Judge assigned in the Eastern District of Pennsylvania.

8.     The allegations of paragraph 8 constitute conclusions of law to which no response is required. Further, the federal law speaks for itself.

9.     The allegations of paragraph 9 constitute conclusions of law to which no response is required. Further, the federal law speaks for itself. It is specifically denied that the DEA has authority to regulate the practice of medicine. Congress manifested no intention in its passage of the CSA to authorize the DEA to intrude into the states' authority to regulate the practice of medicine by licensed physicians. The United States Supreme Court has squarely held that the government has no authority to regulate the practice of medicine.  The Court has stated that "the [CSA] manifests no intent to regulate the practice of medicine generally, which is understandable given federalism's structure and limitations.  The CSA's structure and operation presume and rely upon a functioning medical profession regulated under the States' police powers." *Gonzales*

*v. Oregon,* 546 U.S. 243, 126 S. Ct. 904, 910, 163 L. Ed. 2d 748 (2006). The government here has grossly exceeded the limits on federal power to regulate the practice of medicine as outlined in this decision.

10.     Admitted in part. It is admitted that pharmacies must register with DEA. It is specifically denied that pharmacies are regulated only by the law of the location. Pharmacies are regulated by federal and state authorities.

11.     The allegations of paragraph 11 constitute conclusions of law to which no response is required. Further, the federal law speaks for itself.

12.     The allegations of paragraph 12 constitute conclusions of law to which no response is required. Further, the federal law speaks for itself.

13.     The allegations of paragraph 13 constitute conclusions of law to which no response is required. Further, the federal law speaks for itself.

14.     The allegations of paragraph 14 constitute conclusions of law to which no response is required. Further, state and federal laws speak for themselves.

15.     It is admitted that the AMA has taken the position that generally, but not always, the standard of care advocated by the AMA will require a face to face examination of a patient. However, the AMA does not represent all doctors, and certainly does not represent consumers.

16.     It is admitted that in the year 2000 the FSMB took the position that the use of an online questionnaire failed to meet the standard of care it advocated. However, neither the AMA nor the FSMB had considered a model with the safeguards and assurances built into the model utilized by claimants.

17.     It is specifically denied that this case involves the unlawful distribution of controlled substances through internet pharmacies. The property at issue here was the lawful proceeds of the operation of legitimate business in accordance with a business model that provides at least as much consumer protection and abuse prevention as the "face-to-face" requirement advocated by DEA.

18.     It is specifically denied that the defendant property was the proceeds of the sorts of operations described in the Complaint. To the contrary, the property was the net profit, after payment of all applicable state and federal taxes, of the operation of legitimate businesses in accordance with the business model outlined by claimants in the action for declaratory judgment filed in the Eastern District of Pennsylvania.

19.     It is specifically denied that the defendant property was the proceeds of the sorts of operations described in the Complaint. See response 18, supra.

20.     It is specifically denied that the defendant property was the proceeds of the sorts of operations described in the Complaint. See response 18, supra.

21.     It is specifically denied that the defendant property was the proceeds of the sorts of operations described in the Complaint. See response 18, supra.

22.     It is specifically denied that the defendant property was the proceeds of the sorts of operations described in the Complaint. See response 18, supra.

23.     Claimants incorporate herein their responses to the allegations set forth in Paragraphs 1 through 22, supra, as if set out here at length.

24.     Denied. The allegations of this paragraph concern the activities of others and are generally beyond the actual knowledge of claimants.

25.    Denied. The allegations of this paragraph concern the activities of others and are generally beyond the actual knowledge of claimants.

26.    Denied. The allegations of this paragraph concern the activities of others and are generally beyond the actual knowledge of claimants.

27.    Denied. The allegations of this paragraph concern the activities of others and are generally beyond the actual knowledge of claimants.

28.    [absent - no allegation in original]

29.    Denied. The allegations of this paragraph concern the activities of others and are generally beyond the actual knowledge of claimants.

30.    Denied. The allegations of this paragraph concern the activities of others and are generally beyond the actual knowledge of claimants.

31.    Denied. The allegations of this paragraph concern the activities of others and are generally beyond the actual knowledge of claimants.

30. [sic] Denied. Mr. Napoli operated businesses according to a business model that is believed to be legitimate and lawful. The allegations of this paragraph concerning the activities of others are generally beyond the actual knowledge of claimants.

31. [sic] Denied. AUSA Seth Weber transmitted a target letter to Mr. Napoli in February of 2006, and Mr. Napoli responded through counsel with a comprehensive explanation of Napoli's position that his business model was not unlawful, and an invitation to resolve this dispute through the judicial system. See Exhibit A (February 24, 2006, letter to AUSA Seth Weber). Thereafter, Napoli commenced an action for a

Declaratory Judgment seeking an adjudication of the legality of the government's construction of the CSA and its application to Napoli's business model.

        A.     The government argued in seeking dismissal of that action that Napoli had no injury or prospect of injury, and had no standing to assert his claims. It now appears that, while that contention was being advanced by the government in the Eastern District of Pennsylvania, the government was preparing these forfeiture actions in the Northern District of California.

        B.     Judge Dalzell dismissed the original Complaint on standing and ripeness grounds, and accepted the government's invitation to avoid the merits of the dispute.

32.    Denied. The allegations of this paragraph concern the activities of others and are generally beyond the actual knowledge of claimants.

33.    Denied. The allegations of this paragraph concern the activities of others and are generally beyond the actual knowledge of claimants.

34.    Denied. The allegations of this paragraph concern the activities of others and are generally beyond the actual knowledge of claimants.

35.    Denied. The allegations of this paragraph concern the activities of others and are generally beyond the actual knowledge of claimants.

36.    Denied. The allegations of this paragraph concern the activities of others and are generally beyond the actual knowledge of claimants.

37.    Denied. The allegations of this paragraph concern the activities of others and are generally beyond the actual knowledge of claimants.

38.    Denied. The allegations of this paragraph concern the activities of others and are generally beyond the actual knowledge of claimants.

39.    Denied. The allegations of this paragraph concern the activities of others and are generally beyond the actual knowledge of claimants.

40.    Denied. The allegations of this paragraph concern the activities of others and are generally beyond the actual knowledge of claimants.

41.    Denied. The allegations of this paragraph concern the activities of others and are generally beyond the actual knowledge of claimants.

42.    Denied. The allegations of this paragraph concern the activities of others and are generally beyond the actual knowledge of claimants.

43.    Denied. The allegations of this paragraph concern the activities of others and are generally beyond the actual knowledge of claimants.

44.    Denied. The allegations of this paragraph concern the activities of others and are generally beyond the actual knowledge of claimants.

45.    Denied. The allegations of this paragraph concern the activities of others and are generally beyond the actual knowledge of claimants.

46.    Denied. The allegations of this paragraph concern the activities of others and are generally beyond the actual knowledge of claimants.

47.    Denied. The allegations of this paragraph concern the activities of others and are generally beyond the actual knowledge of claimants.

48.    It is admitted that there were transfers between Napoli and CFP.

49.    It is specifically denied that any transaction conducted pursuant to the

Napoli business model was unlawful.

50.    It is specifically denied that Dr. Carroza admitted violating any valid law or regulation. To the contrary, Dr. Carroza has always maintained that the business model advocated by Napoli, as implemented by Dr. Carroza, is legitimate and appropriate.

51.    Denied. The allegations of this paragraph concern the activities of others and are generally beyond the actual knowledge of claimants.

52.    Denied. The allegations of this paragraph concern the activities of others and are generally beyond the actual knowledge of claimants.

53.    Denied. Claimants are unable to verify the accuracy of the transactions recited without reviewing the records identified by the government.

54.    Denied. The allegations of this paragraph concern the activities of others and are generally beyond the actual knowledge of claimants.

55.    Denied. The allegations of this paragraph concern the activities of others and are generally beyond the actual knowledge of claimants.

56.    Denied. It is specifically denied that the transaction described violated any valid federal law.

57.    Denied. Claimants are unable to verify the accuracy of the transactions recited without reviewing the records identified by the government.

58.    Denied. The allegations of this paragraph concern the activities of others and are generally beyond the actual knowledge of claimants.

59.    Denied. Claimants are unable to verify the accuracy of the transactions

1    recited without reviewing the records identified by the government.

2        60.    Denied. The allegations of this paragraph concern the activities of others

3    and are generally beyond the actual knowledge of claimants.

4        61.    Denied. The allegations of this paragraph concern the activities of others

5    and are generally beyond the actual knowledge of claimants.

6

7        62.    Denied. The allegations of this paragraph concern the activities of others

8    and are generally beyond the actual knowledge of claimants.

9        63.    Denied. The allegations of this paragraph concern the statements of

10   others and are generally beyond the actual knowledge of claimants.

11

12       64.    Denied. The allegations of this paragraph concern the activities of others

13   and are generally beyond the actual knowledge of claimants.

14       65.    Denied. The allegations of this paragraph concern the activities of others

15   and are generally beyond the actual knowledge of claimants.

16

17       66.    Denied. The allegations of this paragraph concern the activities of others

18   and are generally beyond the actual knowledge of claimants.

19       67.    Denied. The allegations of this paragraph concern the activities of others

20   and are generally beyond the actual knowledge of claimants.

21       68.    Denied. The allegations of this paragraph concern the activities of others

22   and are generally beyond the actual knowledge of claimants.

23

24       69.    Denied. The allegations of this paragraph concern the activities of others

25   and are generally beyond the actual knowledge of claimants.

26       70.    Denied. The allegations of this paragraph concern the activities of others

and are generally beyond the actual knowledge of claimants.

71.    Denied. The allegations of this paragraph concern the activities of others and are generally beyond the actual knowledge of claimants.

72.    It is admitted that the subject account was a lawful legitimate operating account.

73.    Denied. Claimants are unable to verify the accuracy of the transactions recited without reviewing the records identified by the government.

74.    Denied. Claimants are unable to verify the accuracy of the transactions recited without reviewing the records identified by the government.

75.    Denied. Claimants are unable to verify the accuracy of the transactions recited without reviewing the records identified by the government.

76.    Denied. Claimants believe that the transactions conducted pursuant to their business model were legitimate and lawful.

77.    Admitted. The funds seized were the proceeds of legitimate business transactions, after expenses, on which claimants paid all federal, state and local taxes.

78.    Denied. Claimants are unable to verify the accuracy of the transactions recited without reviewing the records identified by the government.

79.    Denied. Claimants are unable to verify the accuracy of the transactions recited without reviewing the records identified by the government.

80.    It is admitted that the subject account was a lawful legitimate operating account.

81.    Admitted. The funds seized were the proceeds of legitimate business

transactions, after expenses, on which claimants paid all federal, state and local taxes.

82.    Denied. Claimants are unable to verify the accuracy of the transactions recited without reviewing the records identified by the government.

83.    Denied. Claimants are unable to verify the accuracy of the transactions recited without reviewing the records identified by the government.

84.    Denied. Claimants are unable to verify the accuracy of the transactions recited without reviewing the records identified by the government.

85.    Denied. Claimants are unable to verify the accuracy of the transactions recited without reviewing the records identified by the government.

86.    Denied. Claimants are unable to verify the accuracy of the transactions recited without reviewing the records identified by the government.

87.    Denied. Claimants are unable to verify the accuracy of the transactions recited without reviewing the records identified by the government.

88.    Denied. Claimants are unable to verify the accuracy of the transactions recited without reviewing the records identified by the government.

89.    It is specifically denied that the account contained the proceeds of unlawful transactions. To the contrary, claimants believe that the funds seized were the proceeds of legitimate business transactions, after expenses, on which claimants paid all federal, state and local taxes.

90.    It is admitted that Napoli purchased the Lamborghini.

91.    Denied. Claimants are unable to verify the accuracy of the transactions recited without reviewing the records identified by the government.

92.    Denied. The Lamborghini, and the funds used to purchase it, were the proceeds of legitimate business transactions, after expenses, on which claimants paid all federal, state and local taxes.

93.    It is admitted that Napoli purchased the Porsche.

94.    Denied. The Porsche, and the funds used to purchase it, were the proceeds of legitimate business transactions, after expenses, on which claimants paid all federal, state and local taxes.

95.    Claimants incorporate herein their responses to the allegations contained in paragraphs 1 through 94, supra, as if set out here at length.

96.    It is admitted that federal law provides for forfeiture under defined circumstances. It is denied that those circumstances are present here.

97.    Denied. It is specifically denied that there is probable cause or lawfully sufficient evidence to support forfeiture of the property.

98.    Claimants incorporate herein their responses to the allegations contained in paragraphs 1 through 97, supra, as if set out here at length.

99.    It is admitted that federal law provides for forfeiture under defined circumstances. It is denied that those circumstances are present here.

100.    Admitted.

101.    Denied. It is specifically denied that there is probable cause or lawfully sufficient evidence to support forfeiture of the property.

102.    Claimants incorporate herein their responses to the allegations contained in paragraphs 1 through 101, supra, as if set out here at length.

103.    It is admitted that federal law provides for forfeiture under defined circumstances. It is denied that those circumstances are present here.

104.    It is admitted that federal law provides for forfeiture under defined circumstances. It is denied that those circumstances are present here.

105.    It is admitted that federal law provides for forfeiture under defined circumstances. It is denied that those circumstances are present here.

106.    Admitted.

107.    Denied. It is specifically denied that there is probable cause or lawfully sufficient evidence to support forfeiture of the property.

WHEREFORE, Claimants respectfully request that this Honorable Court enter an Order quashing the seizure of the property and ordering thr return of the property to claimants forthwith.

## *AFFIRMATIVE DEFENSES*

1.    Venue is not proper in the Northern District of California. If there is any theoretical basis for venue in the Northern District of California, venue should be transferred because the burden of litigating this case in California is grossly disproportionate and unreasonable, and denies claimants due process of law. Further, venue must be laid in the Eastern District of Pennsylvania where there was pending litigation concerning the legitimacy of the claimants' business model at the time that seizure warrants were sought.

2.    On information and belief, claimants contend that the seizures of the property were unlawful because they were conducted on the basis of seizure warrants

secured without probable cause and without fairly disclosing to the Magistrate that claimants had initiated a Declaratory Judgment action in the eastern District of Pennsylvania seeking an adjudication and a declaratory Judgment on the issues presented by the seizure proceedings. Because the government failed to disclose the pending litigation in Pennsylvania, this forfeiture action should be transferred to Pennsylvania, and the government should be estopped to venue this forfeiture action in California.

3.     Claimants demand trial by jury and proof beyond a reasonable doubt before the substantial statutory penalties sought by plaintiff may be imposed.

WHEREFORE, claimants respectfully request that this Honorable Court enter an Order transferring this matter to the Eastern District of Pennsylvania.

Respectfully submitted,

**DUFFY & GREEN**

Dated: _8/6/07_

By: _J. Green by CJ_
Joseph P. Green, Jr.

Ten North Church Street
West Chester, PA 19380
(610)692-0500

Dated: _8/6/07_

By: _____
Christopher J. Cannon

44 Montgomery Street, Suite 2080
San Francisco, CA   94104-6702
(415) 362-6252

*Law Offices*

# DUFFY GREEN & REDMOND

JOHN J. DUFFY
JOSEPH P. GREEN, JR.
P.J. REDMOND

ELIZABETH A. REDMOND

SUITE 307
TEN NORTH CHURCH STREET
WEST CHESTER, PA 19380-3059
*Telephone* 610-692-0500
*Facsimile* 610-430-6668

February 24, 2006

Seth Weber, Esquire
United States Attorneys Office
Suite 1250, 615 Chestnut Street
Philadelphia 19106

*Re: Christopher Napoli*

Dear Mr. Weber:

I write to confirm that we represent Mr. Napoli, and to request notice if he is Indicted. We will produce Mr. Napoli whenever and wherever required (with reasonable notice).

Please inform the grand jury that we contend that Mr. Napoli never knowingly or intentionally violated the law, or knowingly engaged in any act that assisted unlawful activity. Mr. Napoli never knowingly encouraged or assisted any unlawful delivery, or any delivery to minors. He has always acted on sound advice that he continues to believe.

We understand that you and DEA Washington take the position that there are no circumstances under which a "legitimate" doctor patient relationship can be formed without a "face-to-face" examination by a physician. We believe that, as a matter of fact and law, this is the necessary predicate of your proposed prosecution, and an unsupportable assumption. Accordingly, we believe that there is no criminal responsibility for acting as an internet intermediary.

We recognize that you, your Office and your agents may be in a difficult position, required to act in accordance with policy set by others. Similarly, Internet intermediaries want to service consumers but are being subjected to threats of prosecution. Reasonable people have divergent, strongly held views on the difference between Internet commerce in pharmaceuticals and Internet abuse in pharmaceuticals.

The government has the ability to resolve these issues without resorting to Indictment: the government has available to it expedited civil justice processes and procedures to enforce the drug laws, and has the ability to commence a declaratory judgment action to secure an independent, judicial judgment on the proper application of federal laws to Internet intermediaries. We continue to believe that the use of the criminal

Seth Weber, Esquire                                         February 24, 2006
    *Re: Christopher Napoli*

justice system to secure a judicial interpretation is wholly inappropriate.

We are convinced that there is a material difference between Internet abuse, and legitimate Internet marketing. DEA apparently takes the position that the federal government has the exclusive and final authority to define the scope and contour of a "legitimate" doctor-patient relationship. We believe that physicians have the right, and the duty, to determine what is a "legitimate" doctor-patient relationship. Further, we contend that the federal government has no authority to intervene in the physician's assessment of the legitimacy of a doctor-patient relationship. These differences can be resolved in civil litigation before the federal courts. Criminal prosecution, under the circumstances here, is wholly inappropriate.

The DEA's "face-to-face" rule is not medically required, and we believe that you and/or your agents already have spoken with at least one physician who has articulated his view on the propriety of our approach. The American College of Physicians has articulated a broadly held view on the need for our government, and our economy, to incorporate increased reliance on physicians' e-consulting.[1] I hope that you will be able to inform the grand jury that the government's views are not universally accepted, and not the only legitimately held views, on what is required to create a "legitimate" doctor-patient relationship. The American College of Physicians has provided its views on an analogous subject, billing for e-consulting:

Medicare should also begin paying for e-mail and telephonic consultations with patients. ACP, in a series of papers on the "The Changing Face of Ambulatory Medicine," has highlighted the positive use of telephone (http://www.acponline.org/hpp/tel_care.pdf) and internet (http://www.acponline.org/hpp/e-consult.pdf) communications in improving the

---

[1]       American College of Physicians, *The Changing Face of Ambulatory Medicine—Reimbursing Physicians for Computer-Based Care: ACP Analysis and Recommendations to Assure Fair Reimbursement for Physician Care Rendered Online.* (Philadelphia: American College of Physicians; 2003: Policy Paper.) (Available from American College of Physicians, 190 N. Independence Mall West, Philadelphia, PA 19106.) (http://www.acponline.org/hpp/e-consult.pdf).

2

Seth Weber, Esquire                                                        February 24, 2006
         Re: Christopher Napoli

quality of patient care and increasing physician productivity. These non face-to-
face services, which Medicare currently does not routinely reimburse, can improve
quality by facilitating physician-patient contact that will allow for improved
symptom recognition, diagnosis and follow-up care. These tools can also help
physicians optimize their productivity in serving patients; allowing them to treat a
wide array of non-urgent  conditions and needs by phone or internet without the
time and expense of an office visit, while reserving face-to-face care for patients
most in need of intensive direct care.

*The Impending Collapse of Primary Care Medicine and Its Implications for the State of
the Nation's Health Care: A Report from the American College of Physicians* (January
30, 2006).

     Our free-market economy and technological developments of the 21st century are
leading inexorably to efficiencies in the pharmaceutical industry; pharmaceutical
manufacturers advertise, Internet intermediaries provide software-controlled opportunities
to purchase the advertised substance, licensed doctors review the patients' requests for
propriety and efficacy. Software design and delivery safeguards can provide at least as
stringent protection for consumers, and at least as much protection against abuse, as the
requirement for a "face-to-face" meeting between the physician and the patient.

     Privacy and convenience issues lead consumers to choose internet intermediaries
to purchase pharmaceutical products. We offer to sponsor an independent survey of
customers to determine why they chose the Internet to service their pharmaceutical
purchases. Let's use an independent consulting firm; if you will agree to release customer
information from your investigation to an independent market research firm, we'll
arrange for an Internet trade group to fund it. If the government really believes that
Internet intermediaries serve no legitimate purpose, let's ask the consumers whether they
confirm that view.

     How will Internet intermediaries operate going forward? Doctors will act as
consultants, and intermediaries will operate as independent practice system providers and
billing services. Doctors will review patients' written requests and make independent
assessments of the propriety and efficacy of the requests. No opiates or Schedule I or II
medications will be prescribed, as existing rules require delivery of a paper prescription,
and make Internet commerce inefficient.

3

Seth Weber, Esquire                                    February 24, 2006
       *Re: Christopher Napoli*

An Internet intermediary will provide an on-line opportunity for consumers to purchase approved products from U.S. licensed pharmacies after online consultation with a U.S. licensed physician. An Internet intermediary will provide the Doctor with on-line requests from potential patients requesting authorization to purchase prescription medication and other pharmaceuticals. An Internet intermediary will utilize software that requires that the customer provide relevant physical and diagnostic information, and an opportunity for Doctor to contact customer by telephone to discuss the request, if deemed appropriate by Doctor.

An Internet intermediary will maintain software and other safeguards that will ensure, inter alia, that

      a.     customers will be able to request any particular pharmaceutical or medication only once per month from any particular computer;

      b.     customers do not order or receive incompatible or contraindicated pharmaceuticals or medications

      c.     customers do not receive inappropriate multiple deliveries; and

      d.     customers will only receive a requested pharmaceutical or medication by restricted delivery requiring the signature of an adequately identified adult (including, by way of example only, the customer's identification of an adult authorized to accept the pharmaceutical or medication, along with customer's designation of an accepted form of identification);

The Doctor will utilize independent medical judgment to review patients' requests to secure medications. The Doctor will decide whether or not to approve the request, and, where appropriate, to prescribe medication. The Doctor will exercise independent medical judgment, and will conduct the practice of medicine within and in accordance with all relevant ethical and legal regulations.

An Internet intermediary will act as a payment and billing service for the Doctor, and will allocate compensation to the Doctor for his or her services based on a negotiated fee per request reviewed, whether the request to secure medications is approved or rejected. The Doctor will act as an independent contractor, exercising independent

Seth Weber, Esquire                                February 24, 2006
        *Re: Christopher Napoli*

medical judgment, and will not act as an employee of an Internet intermediary.

An Internet intermediary will also act as custodian of the records of patient prescription requests and review thereof, and records of any contact between Doctor and patient. The Internet intermediary will ensure that the Doctor obtains and maintains appropriate professional liability insurance independent of an Internet intermediary.

We respectfully suggest that, if the United States is looking for an Internet intermediary to Indict, this isn't the one to choose. We have a good faith disagreement on the scope of federal authority. We urge you to elect civil judicial proceedings, because neither a conviction nor an acquittal will provide the guidance that the government and the industry need.

Thank you for your consideration.

                                        Very truly yours,


                                        Joseph P. Green, Jr.

JPGjr/pcl

cc:    Mr. Christopher Napoli

## PROOF OF SERVICE BY U.S. MAIL

1

2      I, the undersigned, declare:

3      I am employed in the City and County of San Francisco, State of California.  I am

4  over the age of 18 years and not a party to the within action; my business address is 44

5  Montgomery Street, Suite 2080, San Francisco, California 94104.

6
   On August 6, 2007, I served the within:
7

8  **CLAIMANTS' ANSWER TO COMPLAIN FOR FORFEITURE AND CLAIMS
   FOR RETURN OF PROPERTY**

9
   on the parties in said cause, by placing a true copy thereof in a sealed envelope with
10
   postage thereon fully prepaid, in the United States mail at San Francisco, California,
11
   addressed as follows:
12

13      STEPHANIE M. HINDS (CSBN 154284)
        Assistant United States Attorney
14      450 Golden Gate Avenue, Box 36055
        San Francisco, CA 94102
15

16      I declare under the penalty of perjury that the foregoing is true and correct, and

17  that this declaration was executed on

18  August 6, 2007, at San Francisco, California.

19

20

21

22      Rebecca Cannon

23

24

25

26

Answer to Forfeiture Complaint and Demand for Jury Trial